IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) Criminal No. 19-262 |
| v. | ) |
| | ) |
| PAUL CHRETIEN, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

I.  **Introduction**

Pending before the court are pro se motions filed by Defendant Paul Chretien ("Chretien" or "Defendant") for compassionate release under 18 U.S.C. § 3582(c)(1)(A), the United States Sentencing Commission Guidelines U.S.S.G. § 1B1.13, and the First Step Act of 2018, Pub. L. No. 115–391, 132 Stat. 5194, 5239 (2018). (ECF No. 100 Docketed as Motion to Reduce Sentence, ECF No. 101 Docketed as Motion and Memorandum for Release from Custody). The Government filed a response in opposition to the Defendant's motions (ECF No. 106) and the Defendant filed a reply to the Government's response in opposition (ECF No. 112). The motions are ripe for decision.

II.  **Factual and Procedural Background**

On August 27, 2019, a grand jury returned a seven-count indictment against Chretien, charging him with violations of 18 U.S.C. § 2252(a)(2), (b)(1) for Distribution and/or Receipt of Material Depicting the Sexual Exploitation of a Minor, and 18 U.S.C. § 2252(a)(4)(B), (b)(2) for Possession of Material Depicting the Sexual Exploitation of a Minor from August 22, 2018,

through February 6, 2019. (ECF No. 3).

On March 3, 2021, Chretien pleaded guilty to count one (distribution of material depicting the sexual exploitation of a minor) and count seven (possession of material depicting the sexual exploitation of a minor). (ECF No. 63). On September 16, 2021, he was sentenced to 72 months of imprisonment, pursuant to a plea agreement, to be followed by 5 years of supervised release at each count, to run concurrent. (ECF No. 91).

On June 2, 2024, Chretien wrote a letter to the judge's chambers, which was docketed as a motion for compassionate release/reduced sentence under the First Step Act. (ECF No. 100). Chretien contended that he is a low risk for recidivism. He argued that the court should reduce his sentence because he has maintained a "positive attitude" in prison, and he has continued to "dig deeper" into his therapy so as to not "repeat [his] mistakes" and "avoid future mishaps and/or repeat possible temptation." (Id. at 2). Chretien noted his concerns about his wife's medical conditions in this letter, but the only mention of his own medical situation was stating that his ability to walk around the track was "limited due to pain from the arthritis in [his] hips," without referencing any other condition that would have demonstrated that compassionate relief would be appropriate. (Id.). He submitted a letter from his wife, in which she stated she misses him and would like him to be home to assist her with her health care needs. (Id. at 3). He enclosed four pages of medical records for his wife documenting recent falls and positive COVID results that required her to miss work, as well as thirty-nine pages of his own medical records, some going back over a decade, without further commentary or context. (ECF No. 101-1). Chretien's release date is currently scheduled for October 25, 2026. https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results, last visited December 18, 2024.

2

On June 28, 2024, Chretien filed a petition and memorandum in support of petition for relief under the First Step Act. (ECF No. 101). He argued that his place of confinement, FCI Elkton, is incapable of treating his pre-existing, chronic medical conditions. He reported that the conditions and nature of his medical conditions, include: age, "obesity, depression, memory loss, acid reflux (GERD), mental confusion, a weakened immune system, high blood pressure, hearing problems, low blood oxygen levels, high cholesterol, high blood sugar indicative of pre-diabetes, severe obstructive sleep apnea, Epstein-Barr Virus, long-COVID, and generalized fatigue." (Id. at 3). Chretien did not provide additional medical records in support of these contentions beyond what had been submitted with his letter at ECF No. 100. He claimed that contracting a COVID infection with his auto-immune deficiency would be an "extraordinary and compelling reason" justifying the grant of a compassionate release. (Id. at 6). Chretien additionally requested consideration for sentence reduction because the November 2023 change to the United States Sentencing Commission Guidelines amendment (Amendment 821) was retroactively applicable to offenders with zero criminal history points at the time of their offenses. (Id. at 11).

On July 26, 2024, the Government submitted a response in opposition to Chretien's motion (ECF No. 106), accompanied by over 300 pages of Chretien's medical records, under seal, which reflected Chretien's medical treatment since he has been in prison. (ECF No. 107). The Government's position is that Chretien did not exhaust all administrative remedies through the Bureau of Prisons ("BOP"). (ECF No. 106 at 2). Even if he had, it argues that no extraordinary and compelling reasons exist to justify the grant of early release because a) the BOP has appropriately treated Chretien's medical conditions; b) "COVID is virtually non-existent at his facility;" and c) Chretien has been vaccinated for COVID. (Id.). The Government notes Chretien's request for a sentence reduction under Amendment 821 fails because he was

convicted of a sex crime, and, therefore, the decrease of offense level is not applicable. U.S.S.G. § 4C1.1(a)(5). Finally, the Government maintains that even if Chretien had demonstrated extraordinary and compelling reasons, his motion would still fail under the 18 U.S.C § 3553 factors the court must weigh when considering a sentence reduction. (Id.).

The Defendant filed his reply to the Government's response in opposition on November 4, 2024. He contended there is no requirement under the First Step Act to "exhaust administrative remedies, other than the notice to the warden of his facility," which he claims his request fulfilled. (ECF No. 112 at 2). Chretien, however, did not submit evidence that he notified his warden of his request for compassionate release. The Government provided the court with two administrative requests associated with Chretien that it located. (ECF Nos. 106-1, 106-2). In the reply, Chretien reiterated the following health conditions from his initial motion: "obesity, depression, memory loss, acid reflux (GERD), mental confusion, a weakened immune system, high blood pressure, hearing problems, low blood oxygen levels, high cholesterol, high blood sugar indicative of pre-diabetes, severe obstructive sleep apnea, Epstein-Barr Virus, long-COVID, and generalized fatigue." (ECF No. 112 at 3). He added "leg edema, neuropathy in legs and feet, osteoarthritis in both hips, degenerative disc disease in lower back, and heart problems." (Id.). Chretien noted that "[h]e had six inches of his colon removed prior to coming to prison, based on a cancer diagnosis." (Id.). Chretien stated that he has served more than half of his period of incarceration and has maintained an exemplary behavior and disciplinary record. (Id. at 2). He posited that a sentence reduction is warranted "due to the circumstances set forth" in his motion, "but also because [he] has strived to improve throughout the lengthy custodial sentence." (ECF No. 112 at 10).

4

### III. Discussion

#### A. Applicable Law

"A federal court generally may 'not modify a term of imprisonment once it has been imposed.'" Dillon v. United States, 560 U.S. 817, 819 (2010) (quoting 18 U.S.C. § 3582(c)). The Third Circuit Court of Appeals has recognized that Congress enacted exceptions to this "general rule of finality" in 18 U.S.C. § 3582(c)(1). United States v. Easter, 975 F.3d 318, 323 (3d Cir. 2020) (explaining that "[s]entence modifications under § 3582(c) constitute 'exception[s] to the general rule of finality' of sentences") (quoting Dillon, 560 U.S. at 824).

Prior to the enactment of the First Step Act, only the Director of the BOP could file a motion for a sentence reduction under §3582(c)(1)(A)(i). Ray v. Finley, No. 3:19-CV-0988, 2019 WL 5569616, at *3 (M.D. Pa. Oct. 29, 2019). On December 21, 2018, Congress enacted, and the President signed into law, the First Step Act. In response to the COVID pandemic, the First Step Act, among other things, amended § 3582(c)(1)(A) and expanded the compassionate release and reduction in sentencing programs by permitting the filing of a motion in federal court by an inmate, after the inmate exhausted administrative remedies through the BOP. United States v. Raia, 954 F.3d 594, 595 (3d Cir. 2020) (citing 18 U.S.C § 3582(c)(1)(A)(i)). Chretien, acting pro se, seeks this court to grant him a compassionate release from imprisonment or sentence reduction under 18 U.S.C. § 3582(c)(1)(A).

Section 3582(c)(1)(A), as amended by the First Step Act, provides in pertinent part:

> **(c) Modification of an imposed term of imprisonment.** —The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau

> of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
>> (i) extraordinary and compelling reasons warrant such a reduction; or
>>
>> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission....

18 U.S.C. § 3582(c)(1)(A). The foregoing statutory provision sets forth a three-part analysis for district courts to utilize to resolve a motion for compassionate release after the court has determined that the inmate exhausted the administrative remedies. First, Third Circuit Court of Appeals has instructed that pursuant to § 3582(c)(1)(A), the district court needs to find that "'extraordinary and compelling reasons warrant such a reduction.'" United States v. Pawlowski, 967 F.3d 327, 329 (3d Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)). Second, "a district court must 'consider[] the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable." Id. (quoting 18 U.S.C. § 3582(c)(1)(A)). Third, the district court must consider whether a sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission, 18 U.S.C. § 3582(c)(1)(A). United States v. Doe, 833 F. App'x 366, 367 n.2 (3d Cir. 2020).

Based upon the foregoing, to grant Chretien compassionate release under § 3582(c)(1)(A), the court must analyze whether: (1) extraordinary and compelling reasons exist for his release; (2)

compassionate release is warranted in consideration of the § 3553(a) factors;[1] and (3) compassionate release is consistent with applicable policy statements issued by the Sentencing Commission. Chretien cites the following as extraordinary and compelling reasons: (1) he suffers from a multitude of pre-existing chronic medical conditions, (ECF No. 101 at 3); (2) the lack of consistent medical attention to those conditions puts him at risk to serious illness from any potential "virus that penetrates the prison." (ECF No. 101 at 4); (3) a Guidelines change, applicable retroactively, entitles offenders with zero criminal history points to a reduction, (ECF No. 101 at 11); and (4) he is remorseful, has admitted his wrongdoing, and reports that he is unlikely to re-offend, (ECF No. 101 at 12).

Chretien bears the burden of proof by a preponderance of the evidence to show that he is entitled to compassionate release. United States v. Smith, No. CR 9-187, 2020 WL 4047485, at *2 (W.D. Pa. July 20, 2020) (citing United States v. Adeyemi, 470 F. Supp. 3d 489 at *512 (E.D. Pa. 2020)). Courts have held that to satisfy this burden, a movant must produce evidence to the court.

---

[1]   The factors set forth in 18 U.S.C. § 3553(a) are:
- the nature and circumstances of the offense and the history and characteristics of the defendant, § 3553(a)(1);
- the need for the sentence imposed to afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner, § 3553(a)(2)(B)-(D);
- the sentencing range established by the Sentencing Commission, § 3553(a)(4);
- any pertinent policy statement issued by the Sentencing Commission, § 3553(a)(5);
- the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, § 3553(a)(6); and
- the need to provide restitution to any victims of the offense, § 3553(a)(7).

See, e.g., United States v. Matthews, No. CR 09-612-1, 2020 WL 5217132, at *6 (E.D. Pa. Sept. 1, 2020).

Paraphrasing 18 U.S.C. § 3582(c)(1)(A), "under the First Step Act, a defendant seeking a reduction in his term of imprisonment bears the burden of satisfying both that he has (1) exhausted remedies before seeking judicial review, and (2) that compelling and extraordinary reasons exist to justify compassionate release." United States v. Sellers, No. CR 10-434, 2020 WL 1972862, at *1 (D.N.J. Apr. 24, 2020)).

### B. Application of the Law

The court will first address the threshold issue of exhaustion and then will consider each of the three parts of the analysis, seriatim.

#### 1. Exhaustion

The Government contends that Chretien failed to exhaust his administrative remedies for at least some of the conditions he listed and argues that Chretien's pending motions fail on the merits for the remaining conditions. Neither Chretien's letter to the court (ECF No. 100), nor his petition (ECF No. 101), included evidence of his exhaustion of administrative remedies. The Government's response in opposition to Chretien's petition (ECF No. 106), noted the BOP had located two requests Chretien had submitted: one electronic submission from March 2023 (ECF No. 106-1), and a second letter to the Warden, from September 2023, which expanded on the first request, outlining additional medical complaints (ECF No. 106-2). Both requests were denied after a review of Chretien's medical records and a determination from the BOP that he did not meet the criteria for a sentence reduction. (ECF Nos. 106 at 8, 106-1 at 7, 106-2 at 7).

After a thorough comparison of Chretien's list of medical conditions from his letter to the court (ECF No. 100), and petition (ECF No. 101), with those referenced in the electronic

administrative request to the BOP (ECF No. 106-1), and his letter to the Warden (ECF No. 106-2), it is apparent that the following reported conditions were not administratively exhausted: obesity, depression, memory loss, mental confusion, hearing problems, low blood oxygen levels, high cholesterol, generalized fatigue, and degenerative disc disease in lower back. Because Chretien failed to comply with § 3582(c)(1)(A)'s exhaustion requirement for these conditions, the court will not consider them to decide his compassionate release motion. See Raia, 954 F.3d at 597.

Because the Government does not contest that the remaining medical conditions were exhausted, the court will assume, without deciding, that Chretien exhausted his administrative remedies for these conditions.

**2.  Extraordinary and Compelling Reasons**

The Third Circuit Court of Appeals has addressed the "compassionate release statute" that allows a sentencing court to reduce a prisoner's sentence if "'extraordinary and compelling reasons' warrant such a reduction' and the reduction is consistent with both the Commission's policy statements and the sentencing factors set forth in 18 U.S.C. § 3553(a)." United States v. Rutherford, 120 F.4th 360, 364 (3d Cir. 2024) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)). The court commented that "[a] sentencing court must first conclude, as a matter of law, that a prisoner is *eligible* for a sentence reduction before it decides whether he *qualifies* for a reduction." Id. (emphasis in original). The court "explained that 'whether any given prisoner has established an extraordinary and compelling reason for release' is a 'threshold question' that determines a prisoner's eligibility for compassionate release." Id. (quoting United States v. Stewart, 86 F.4th 532, 535 (3d Cir. 2023)).

"Congress did not define 'extraordinary and compelling reasons' except to provide

'rehabilitation…alone' does not suffice." Adeyemi, 470 F. Supp. 3d 489, at *499 (quoting 28 U.S.C. § 994(t)). The Third Circuit Court of Appeals has explained that "compelling and extraordinary" reasons for the reduction of a sentence are "defined by the commentary to policy statement U.S.S.G. § 1B1.13." United States v. Handerhan, 789 F. App'x 924, 925 (3d Cir. 2019) (citing United States v. Barberena, 694 F.3d 514, 521 n.10 (3d Cir. 2012)). After the First Step Act was enacted "extraordinary and compelling reasons" were considered to apply to prisoner-initiated motions, as well as to BOP-filed motions for compassionate release. Rutherford, 120 F.4th at 365; see United States v. Andrews, 12 F.4th 255 (3d Cir. 2021).

In April 2023 the Sentencing Commission issued an Amendment to the Policy Statement officially defining "extraordinary and compelling reasons" for prisoner-filed motions for compassionate release. Id. The 2024 Guidelines Manual contains the updated policy statement. As relevant to the pending motion, the policy provides that the court may reduce a term of imprisonment if, after considering the § 3553(a) factors, it determines: (1) extraordinary and compelling reasons warrant the reduction; (2) the defendant is not a danger to any person or the community; and (3) the reduction is consistent with the policy. U.S.S.G § 1B1.13. The policy identifies potential extraordinary and compelling reasons based on (1) medical circumstances of the defendant; (2) age; (3) family circumstances; (4) victim of abuse; (5) other reasons similar in gravity to (1)-(4); and (6) an unusually long sentence. Id.

The court of appeals noted "'when deciding a First Step Act motion, district courts bear the standard obligation to explain their decisions and demonstrate that they considered the parties' arguments.' . . . [The] order may be brief and need not be a point-by-point rebuttal[.]" United States v. Alicea, No. 22-2176, 2023 WL 3947212, at *2-3 (3d Cir. June 12, 2023) (quoting Concepcion v. United States, 597 U.S. 481, 500-01 (2022)).

10

### a. First category: defendant's medical conditions

Chretien lists in his petition a myriad of medical conditions that he suffers from, to include, but not limited to: high blood pressure, pre-diabetes, sleep apnea, Epstein-Barr, long-COVID, acid reflux and obesity. (ECF Nos. 101 at 3, 112 at 3). He maintains that these conditions put him "at risk for serious illness or death" should he contract COVID or another such illness while in prison. (ECF Nos. 101 at 4, 112 at 5). Per U.S.S.G § 1B1.13, "extraordinary and compelling" medical conditions include:

> (A) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
> (B) The defendant is—
>   (i) suffering from a serious physical or medical condition,
>   (ii) suffering from a serious functional or cognitive impairment, or
>   (iii) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
> (C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

U.S.S.G § 1B1.13(b)(1)

Chretien specifically notes his obesity as a contributing factor that makes him particularly vulnerable, but this is one of the conditions that, as established above, Chretien did not administratively exhaust, so it should not be considered here. Even if it were considered, "Defendant's obesity is not 'severe' as defined by the Centers for Disease Control and Prevention ("CDC")." United States v. Bleicher, No. CR 19-99, 2020 WL 2744606, at *3 (D.N.J. May 27, 2020); see United States v. Matos, No. CR 19-113, 2022 WL 702858, at *5 (D.N.J. Mar. 9, 2022) (citing CDC obesity ranges of BMI 30-40 as obese and >40 as severely obese). Chretien's self-reported obesity is a "BMI of 36," which is not severely obese. (ECF No. 112 at 5). The

11

Government produced Chretien's commissary records that indicates Chretien is not making an effort to assist himself in this area. (ECF No. 106-4). Chretien's obesity under the circumstances is not extraordinary and compelling.

Chretien cites his history of "hypertension, which appears on the CDC List as 'possibly' a risk factor." Matos, 2022 WL 702858, at *4. His blood pressure, while elevated, was ordered to be monitored twice a week and he has been prescribed medication to address this condition. (ECF No. 106-3 at BOP-0006). When Chretien complained of abdominal pain from one prescribed medication, the facility medical provider worked with him to substitute a medication to accommodate the intolerance. (Id. at BOP-0005). Under the circumstances, his hypertension is not extraordinary or compelling.

Chretien has the burden of proof to establish his conditions are more than just a collection of bothersome issues, and instead reach the level of serious deterioration in health. U.S.S.G § 1B1.13(b)(1)(C). While the court acknowledges Chretien's medical challenges, his conditions are not "sufficiently … unique or exceptional." United States v. Wax, No. CR 14-251, 2020 WL 3468219, at *3 (D.N.J. June 25, 2020) (citing four decisions); see Pawlowski, 967 F.3d at 328-29 (denying release for defendant with hypertensive heart disease, chronic COPD, dyspnea, sleep apnea, and only one lung).

Chretien is serving his sentence at FCI Elkton, in Lisbon, Ohio. There are 1,982 total inmates at the facility. https://www.bop.gov/locations/institutions/elk/ last visited January 15, 2025. Data listed as current (as of January 3, 2025) reported by BOP indicates that FCI Elkton has 1,000 fully vaccinated inmates and two open cases of COVID. Across all years of tracking, FCI Elkton reported nine deaths from COVID. https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp last visited January 15, 2025.

Chretien has self-reported to be vaccinated against COVID-19 (ECF Nos. 106-5 at BOP2-0019, 0040, 0055, 112 at 4). It is noteworthy that Chretien refused further offers of vaccination or booster shots when they were made available to him. (ECF Nos. 106-5 at BOP2-0055). There is no evidence that FCI Elkton is likely to have a COVID outbreak that would put Chretien in jeopardy, and "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify [ ] release." Raia, 954 F.3d at 597. See, e.g., United States v. Marlin, No. CR 19-168, 2021 WL 5711587 (D.N.J. Dec. 2, 2021).

None of Chretien's medical conditions are considered terminal illnesses at their current point, and do not prevent him from accessing care or advocating for self-care within the correctional facility environment. "Even in the pre-vaccine era, release was regularly denied based on such chronic, controlled conditions, which are not out of the ordinary." Matos, 2022 WL 702858, at *5. For these reasons, Chretien's medical conditions do not meet the level of extraordinary or compelling to justify early release.

**b.    Second category: defendant's age**

The Defendant is 70 years old and falls within the demographic contemplated by the second category, although whether he has experienced a *serious* deterioration of physical health because of the aging process has not been established. U.S.S.G § 1B1.13(b)(2) (emphasis added). Relative to the conditions Chretien lists in his motion, he claims the "lack of consistent attention to [his] medical condition by prison officials combines to put [him] at risk." (ECF No. 101 at 4). The Government produced, for the three years of Chretien's incarceration, over 300 pages of his medical files, establishing that he had regular access to medical care. (ECF Nos. 106-3, 106-5). It does not appear accurate to say that Chretien's needs were not being addressed. There are repeated instances of Chretien refusing the treatment offered for some conditions, by his own admission,

and per the BOP records. (ECF Nos. 106-3 at BOP-0094, BOP-0095, BOP-0203). Other conditions raised in his motion were addressed by BOP, but Chretien seem dissatisfied with the results,[2] while still others raised in the motion appear to be addressed for the first time in the motion without having requested support for them from BOP medical (e.g., depression, memory loss, mental confusion), and are not considered for the failure to exhaust reason discussed above. (ECF No. 101 at 3).

The second half of this category expects a defendant to have "served at least ten years or seventy-five percent of [his] term of imprisonment, whichever is less." Adeyemi, 470 F. Supp. 3d 489, at *500 (citing U.S.S.G. § 1B1.13 cmt. n.1(B)). Here, Chretien has served just more than three years of his 72-month sentence, which is just over half of his term of imprisonment. This situation does not justify finding extraordinary or compelling reasons to support early release.

### c.   Third category: defendant's family circumstances

This category contemplates an incarcerated person needing to become available for the incarcerated person's child should the primary caregiver die or become incapacitated, which is not applicable here, because Chretien has no children. The other option under this category is "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." U.S.S.G § 1B1.13(b)(3). In his initial letter, Chretien mentions some health issues that his wife has had in the past that he had to be there for her (e.g., when she fell and broke a hip, COVID). (ECF No. 100 at 2). There is nothing, however, in the record that indicates his wife is currently incapacitated, or any reason to believe

---

[2] As an example, Chretien's acid reflux (GERD) complaint (ECF No. 101 at 3) was addressed by a BOP medical assessment on April 30, 2024, diagnosing no active GERD (ECF No. 106-3 at BOP-0010). A June 2023 upper endoscopy finding of reflux esophagitis tested negative for malignancies and was otherwise normal. (Id. at BOP-0102, 0113). The prescription for Omeprazole was discontinued at this point. (Id. at BOP-0102).

14

that he would be the *only* caregiver available for her should she have a short-term need. See e.g., Matthews, 2020 WL 5217132 at *6. Chretien's wife's concern about needing to have a routine procedure, such as a colonoscopy, is not the type of situation envisioned by the term "incapacitation," which is usually "interpreted to mean 'completely disabled,' and to refer to someone who 'cannot carry on any self-care and is totally confined to a bed or chair.'" United States v. Nassida, No. CR 14-241, 2020 WL 4700845 (W.D. Pa. Aug. 13, 2020) (quoting United States v. Collins, No. 15-10188, 2020 WL 136859 (D. Kan. Jan. 13, 2020)). Chretien's concerns about his wife, while understandable and reflective of his love for her, do not justify a finding of extraordinary or compelling reasons to support early release.

### d. Fourth through sixth categories: not applicable

The additional categories listed are not applicable in this case. Chretien was not the victim of abuse. There are no "other" reasons or combination of circumstances that when considered together would have the same gravity as categories (1) to (4). Finally, Chretien did not receive an unusually long sentence, and has not already served at least ten years of it. In fact, he was sentenced to 72 months, significantly below the applicable advisory Guidelines range of 151-188 months. (ECF Nos. 73, 91).

### 3. § 3553 Factors

When imposing a sentence on a defendant, the court must consider the nature and circumstances of the offense and history and characteristics of the defendant in order to impose a sufficient, but not greater than necessary, sentence. § 3553(a)(1). The court did take into account the fact that this criminal case was Chretien's first involvement with the legal system when sentencing him to 72 months of imprisonment, significantly below the applicable advisory Guidelines range of 151-188 months. "A further reduced sentence here would not 'reflect the

seriousness of the offense,' 'promote respect for the law,' or 'provide just punishment for the offense.'" Marlin, 2021 WL 5711587, at *3 (quoting § 3553(a)(2)(A)). "It would also create an 'unwanted sentence disparit[y] among defendants with similar records who have been found guilty of similar conduct.'" Id. (quoting Kimbrough v. United States, 552 U.S. 85, 107 (2007)).

In order to protect the public from further crimes of the defendant, the existing sentence is needed. The court's concerns arise from the defendant claiming he "does not deny his guilt," while asserting there were "no victims" to his offenses. (ECF No. 112 at 11). These statements indicate that he may not have taken full responsibility and appreciate the impact of his actions on the children victims of the child pornography he possessed. Many of those children are adversely affected for life due to the trauma of having those files still circulating. Chretien recognizes he needs to work more on "making the necessary changes to avoid future mishaps and/or repeat possible temptation." (ECF No. 101 at 2). Under the circumstances, there is no extraordinary or compelling reason to change "the lawfully imposed sentence" "imposed for particular violations of a statute." United States v. Andrews, 12 F.4th 255 (3d Cir. 2021) (quoting United States v. Thacker, 4 F. 4th 569, 574 (7th Cir. 2021).

Consideration of the § 3553 factors does not favor reduction of the sentence imposed.

### 4. Sentencing Commission Policy Statements

#### a. §4C1.1(a)(5)

Chretien requested consideration for a sentence reduction because the November 2023 change to the United States Sentencing Commission Guidelines (Amendment 821) was retroactively applicable to "offenders with zero criminal history points" at the time of their offenses. (ECF No. 101 at 11). Chretien is ineligible for a sentence reduction under this amendment because the defendant must meet *all* the criteria listed, and he is unable to meet this

requirement because the instant offense of conviction is a sex offense. U.S.S.G. §4C1.1(a)(5).

      **b.** **§ 1B1.13(d)**

The rehabilitation of a defendant, by itself, cannot be an extraordinary and compelling reason, but "may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." U.S.S.G. § 1B1.13(d) (citing 28 U.S.C. 994(t)); see Matthews, 2020 WL 5217132, at *6. "Defendant's remorse and significant rehabilitation do not mitigate the need for a sentence which appropriately reflects the seriousness of Defendant's offense and promote respect for the law." Wax, 2020 WL 3468219, at *4.

Because the court concludes that Chretien failed to show an extraordinary or compelling reason, or a sufficient reason under the § 3553 factors to justify a reduction of his sentence, there is no need to further consider whether Chretien poses a danger to any person or the community at this time. U.S.S.G. § 1B1.13(a)(2).

### IV. Conclusion

The court commends Chretien for his actions while incarcerated to rehabilitate himself and to take advantage of available programming afforded by the BOP. The court encourages him to continue to do so. Chretien, however, did not meet the burden to establish extraordinary and compelling reasons to warrant compassionate release. Even if he had, consideration of the § 3553(a) factors and the applicable policy statements issued by the Sentencing Commission require the court to conclude that a reduction of his sentence would be inconsistent with the statutory sentencing purposes and applicable guidelines policies.

For the reasons set forth above, Chretien' pro se motions for compassionate release or

sentence reduction (ECF Nos. 100, 101) will be denied.

    An appropriate order will be entered.

                                                BY THE COURT,

Dated: January 16, 2025                       /s/ JOY FLOWERS CONTI
                                                Joy Flowers Conti
                                                Senior United States District Court Judge